**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vina Yazzie, | No. CV-14-08153-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| County of Mohave, et al., | |
| Defendants. | |

Pending before the Court is a Motion for Summary Judgment on Counts 7-11 of Plaintiff's First Amended Complaint, (Doc. 83), filed by Defendants Mohave County, Steve Latoski, Ramon Osuna, Kevin Stockbridge, and Warren Twitchel[1] ("Defendants") on January 25, 2016. On February 29, 2016, Plaintiff filed a letter addressed to the Court, ostensibly in response to Defendants' motion. (Doc. 88). On March 11, 2016, Defendants filed a reply brief. (Doc. 89). Two months later, Plaintiff filed a second letter, this time requesting additional time to file another response to Defendants' motion for summary judgment. (Doc. 91). On May 17, 2016, the Court deemed Plaintiff's second letter a request for extension of time and permitted Plaintiff to file another response by June 6,

---

[1] The motion identifies this individual as "Warren Twitchell," *see* (Doc. 83 at 1, 6, 14), and an accompanying affidavit states the same, *see* (Doc. 84-3 at 25–27). Defendants' reply brief and Answer to Plaintiff's First Amended Complaint ("FAC"), however, refer to this individual as "Warren Twitchel." *See* (Docs. 14 at 1; 96 at 1). Because the docketing of this case lists this Defendant as "Warren Twitchel," the Court will refer to him as such.

2016. (Doc. 92). On June 8, 2016, Plaintiff filed a third letter, apparently in response to Defendants' motion for summary judgment. (Doc. 93).[2] Defendants filed a second reply brief on June 23, 2016. (Doc. 96). The Court now rules on Defendants' motion.

## I. Background[3]

Plaintiff, a forty-nine year old Native American woman, was employed by Defendant Mohave County's Public Works Department ("PWD") for over seventeen years. (Doc. 84 at 1). As a term of her employment, Plaintiff was required to maintain a Commercial Driver's License ("CDL"). (*Id.* at 2). Plaintiff began her tenure at PWD in 1995 as a Road Maintenance Worker. (*Id.* at 1). Plaintiff applied for and was promoted to Senior Road Maintenance Worker in 2001 and to Road Maintenance Worker Specialist in 2002. (*Id.*)[4] The only promotion Plaintiff applied for but did not receive was for a

---

[2] As Plaintiff is appearing *pro se*, her filings must be construed "liberally." *See Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir. 1984); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Accordingly, although Plaintiff's third letter does not indicate that it is a response to Defendants' motion for summary judgment, *see* (Doc. 93), the Court will construe it as such.

[3] Local Rule of Civil Procedure ("Local Rule") 56.1(b) requires a party opposing a summary judgment motion to file a separate controverting statement of facts either agreeing with or disputing each of the moving party's statements of fact. If the non-movant disputes a statement of fact, she must point to admissible evidence in the record showing that a genuine dispute exists. LRCiv 56.1(b). If the non-movant does not properly address a statement of fact, the Court may consider that fact undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2). In this case, Plaintiff did not file a separate controverting statement of facts, nor did she otherwise respond to any of Defendants' factual assertions. Although appearing *pro se*, Plaintiff is still required to follow the Local Rules and Federal Rules of Civil Procedure. *See, e.g.*, LRCiv 83.3(c)(1); *Carter v. Comm'r*, 784 F.2d 1006, 1008 (9th Cir. 1986); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Accordingly, for purposes of this motion, the Court will deem Defendants' statement of facts undisputed unless the record proves otherwise and will grant summary judgment in favor of Defendants "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

[4] Other documents in the record indicate that Plaintiff was further promoted to the position of "Operator III" in 2003. *See* (Doc. 44-2 at 2–3).

- 2 -

"superintendent" position. (*Id.* at 8). Plaintiff earned an increase in salary for each promotion and was awarded multiple bonuses throughout her career. (*Id.* at 2). Plaintiff generally received satisfactory supervisor feedback on her annual reviews. (*Id.*)

The Mohave County Merit Rules ("Merit Rules") govern discipline of PWD employees who test positive for drugs or alcohol while on duty. (*Id.*) Merit Rule 507 begins by warning employees that "violations of this Rule may result in discipline for existing employees, up to and including dismissal." (Doc. 84-1 at 11). Merit Rule 507(C)(5)(b)(ii) then expressly provides that if a PWD employee who occupies a safety sensitive position tests positive for drugs while on duty, "such employee may be immediately dismissed." (Doc. 84 at 3). Merit Rule 701(A)(4)(g) also explicitly prohibits employees from being under the influence of marijuana while on duty or on county property. (*Id.*) PWD employees who carry CDLs and operate commercial vehicles, such as Plaintiff, are considered to be in safety sensitive positions and are subject to random drug testing. (*Id.* at 3–4). Employees subject to drug testing are randomly selected by and tested at the Kingman Regional Medical Center. (*Id.* at 4).

Plaintiff knew that the Merit Rules prohibited the consumption of marijuana, signed acknowledgements that she received Mohave County's policies, and attended training sessions specifically addressing the prohibited consumption of illegal drugs, e.g., marijuana. (*Id.* at 12). Moreover, Plaintiff understood that employees were subject to termination pursuant to PWD's standards for testing positive for drugs or alcohol while on duty. (*Id.* at 6).

As Director of PWD since 2009, Defendant Latoski is solely in charge of disciplining employees pursuant to the Merit Rules. (*Id* at 4; Doc. 84-1 at 2). According to Defendant Latoski, strict enforcement of the Merit Rules is necessary because "the use of tools and/or operation of equipment that if not operated in an alert manner and properly could harm both the operator and/or the public." (Doc. 84 at 3). During Defendant Latoski's tenure, if a PWD employee in a safety sensitive position tested positive for alcohol or drugs while on duty, the result was "uniform . . . dismissal." (*Id.* at

4). Since January 2010, all ten PWD employees in safety sensitive positions who tested positive for alcohol or drugs while on duty were not offered substance abuse counseling but were terminated or resigned in lieu of termination. (*Id.* at 5).[5] Of those ten employees, eight were Caucasian, one was Hispanic, and one was Native American (Plaintiff). (*Id.* at 5, 8).

On July 15, 2013, Plaintiff attended a drug and alcohol training session conducted by Defendant Twitchel. (*Id.* at 5). During the session, Defendant Twitchel discussed a draft "Zero Tolerance Policy" for drug use that had yet to be approved by the County Board of Supervisors. (*Id.*)[6] Defendant Twitchel encouraged the employees in attendance to ask questions in order to fully understand the county's policies. (*Id.* at 6). At the session, Plaintiff was reminded that discipline for a failed drug test would be carried out pursuant to the Merit Rules. (*Id.*)

After the July 15, 2013 meeting, Plaintiff was randomly selected for a drug screening and was tested at Kingman Regional Medical Center. (*Id.*) Plaintiff was not selected for every random drug screen. (*Id.* at 8). On July 24, 2013, Plaintiff was notified that she had tested positive for marijuana. (*Id.* at 6). Because she had recently consumed marijuana illegally, Plaintiff was "not surprised" at the result. (*Id.* at 7; Doc. 84-1 at 108).

On July 25, 2013, Plaintiff attended a meeting with Defendants Stockbridge, Twitchel, and Latoski to discuss her test results. (Doc. 84 at 6). Instead of admitting that the positive test was accurate because of her recent marijuana consumption, Plaintiff asserted that the result was a false positive due to Marinol, a prescription that she was purportedly taking. (*Id.* at 7; Doc. 84-3 at 79). Plaintiff admitted, however, that she never actually consumed Marinol prior to the drug test and knew that the positive result was

---

[5] In fact, Defendant Latoski even terminated an employee who lost his CDL after pleading guilty to a DUI while off duty. (Doc. 84-1 at 5).

[6] The Zero Tolerance Policy may have been developed due to an incident where a PWD supervisor knew that an employee was under the influence of drugs but did not do anything about it. (*Id.* at 4–5). The employee subsequently killed six people in a car accident. (*Id.*)

- 4 -

due to her recent marijuana use. (Doc. 84 at 6). During the meeting, Plaintiff was "afraid" and lied about her test result because she knew that employees were being terminated for testing positive for drugs or alcohol. (*Id.*; Doc. 84-1 at 112–13). Defendant Latoski advised Plaintiff that she was being placed on administrative leave and could re-test the sample pursuant to the Merit Rules. (Doc. 84 at 6).[7]

On July 30, 2013, Defendant Latoski sent Plaintiff a letter notifying her of his intent to dismiss her from employment. (Doc. 84-1 at 78). On August 6, 2013, Defendant Latoski, as sole decision maker for Defendant Mohave County, informed Plaintiff that she was being terminated pursuant to the Merit Rules and advised her of her right to appeal. (Doc. 84 at 7). Defendant Latoski testified that the only reason he terminated Plaintiff was because she tested positive for marijuana in violation of the Merit Rules. (*Id.* at 8). Plaintiff filed for a hearing regarding her termination, and after a Merit Commission Appeal Hearing on December 20, 2013, her termination was upheld. (*Id.*) Plaintiff subsequently filed this lawsuit on August 20, 2014. (Doc. 1).

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[7] Rather than re-test the original sample as required by the Merit Rules, Plaintiff herself went to get retested more than a week after the initial test. (Doc. 84-3 at 16).

- 5 -

1    Initially, the movant bears the burden of pointing out to the Court the basis for the
2 motion and the elements of the causes of action upon which the non-movant will be
3 unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to
4 the non-movant to establish the existence of material fact. *Id.* The non-movant "must do
5 more than simply show that there is some metaphysical doubt as to the material facts" by
6 "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"
7 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting
8 Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the
9 evidence is such that a reasonable jury could return a verdict for the nonmoving party.
10 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare
11 assertions, standing alone, are insufficient to create a material issue of fact and defeat a
12 motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility
13 determinations, the weighing of the evidence, and the drawing of legitimate inferences
14 from the facts are jury functions, not those of a judge, . . . [t]he evidence of the
15 nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at
16 the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S.
17 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of
18 credibility, including questions of intent, should be left to the jury." (citations omitted)).

19    At the summary judgment stage, the trial judge's function is to determine whether
20 there is a genuine issue for trial. There is no issue for trial unless there is sufficient
21 evidence favoring the non-moving party for a jury to return a verdict for that party.
22 *Liberty Lobby*, 477 U.S. at 249–50. If the evidence is merely colorable or is not
23 significantly probative, the judge may grant summary judgment. *Id.* Notably, "[i]t is well
24 settled that only admissible evidence may be considered by the trial court in ruling on a
25 motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179,
26 1181 (9th Cir. 1988).

**III.  Analysis**

Five claims remain from Plaintiff's FAC.[8] Count 7 alleges that Defendant Mohave County violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff based on her race and/or ancestry. (Doc. 4 at 16–17). Counts 8 and 9 allege that Defendant Mohave County violated Plaintiff's rights under the Family Medical Leave Act ("FMLA"). (*Id.* at 17–19). Count 10 alleges that the individual Defendants discriminated against Plaintiff based on her race and/or ancestry in violation of 42 U.S.C. § 1981. (*Id.* at 19–21). Finally, Count 11 alleges that the individual Defendants violated Plaintiff's civil rights under 42 U.S.C. § 1983. (*Id.* at 21–22). The Court will address each Count in turn.

**A.  Counts 7 and 10: Violations of Title VII and § 1981**[9]

Plaintiff's seventh and tenth Counts allege that Defendants violated Title VII and § 1981 by discriminating against Plaintiff based on her race and/or ancestry. (*Id.* at 16–17, 19–21). Specifically, Plaintiff claims that "other non-Native American employees hired by the Road Maintenance Department after her hire date received more frequent promotions and pay raises." (*Id.* at 17, 20). Plaintiff also asserts that "the County did not terminate other similarly situated non-Native American employees who violated the County's Drug and Alcohol Policies." (*Id.*)

**1.  Legal Standard for Discrimination under Title VII and § 1981**

Title VII forbids a covered employer to "discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981

---

[8] The Court previously dismissed Counts 1-6 of the FAC in their entirety, (Doc. 82 at 5), and Counts 10 and 11 against Defendant Mohave County, (Doc. 74). Counts 10 and 11 remain pending against Defendants Latoski, Osuna, Stockbridge, and Twitchel (the "individual Defendants"). (*Id.*)

[9] Because the same legal principles and standards apply to both Title VII and § 1981 claims, *see Manatt v. Bank of Am., NA*, 339 F.3d 792, 797–98 (9th Cir. 2003) (citations omitted), the Court addresses both Counts together.

- 7 -

1  states that "[a]ll persons . . . shall have the same right in every State and Territory . . . to
2  the full and equal benefit of all laws and proceedings for the security of persons and
3  property as is enjoyed by white citizens, and shall be subject to punishment, pains,
4  penalties, taxes, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

5  A plaintiff may prove a Title VII or § 1981 claim in one of two ways. First, she
6  may produce "direct or circumstantial evidence demonstrating that a discriminatory
7  reason more likely than not motivated the employer." *Surrell v. Cal. Water Serv. Co.*, 518
8  F.3d 1097, 1105 (9th Cir. 2008). Alternatively, the Court applies the burden-shifting
9  framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the
10 *McDonnell Douglas* framework, a plaintiff "must first establish a *prima facie* case of
11 discrimination or retaliation." *Surrell*, 518 F.3d at 1105. This requires showing that "(1)
12 [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was
13 subject to an adverse employment action; and (4) similarly situated individuals outside
14 [her] protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis*, 225
15 F.3d 11125, 1123 (9th Cir. 2000). A plaintiff may alternatively satisfy the fourth element
16 by showing that her position was filled by someone outside of her protected class. *See*
17 *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

18 "If the plaintiff establishes a *prima facie* case, the burden then shifts to the
19 defendant to articulate a legitimate, nondiscriminatory reason for its allegedly
20 discriminatory or retaliatory conduct." *Surrell*, 518 F.3d at 1106. The defendant's burden
21 is only of production, not persuasion. *Id.* If the defendant does so, then there is no
22 presumption of discrimination and the plaintiff may defeat summary judgment by
23 showing that the defendant's "proffered nondiscriminatory reason is merely a pretext for
24 discrimination." *Id.* (quoting *Dominguez-Curry v. Nev. Trans. Dep't*, 424 F.3d 1027,
25 1037 (9th Cir. 2005)). To satisfy this burden, the plaintiff "must show that the articulated
26 reason is pretextual either directly by persuading the court that a discriminatory reason
27 more likely motivated the employer or indirectly by showing that the employer's
28 proffered explanation is unworthy of credence. Although a plaintiff may rely on

circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo*, 281 F.3d at 1062.

**2. Analysis**

Because Plaintiff does not present any direct or circumstantial evidence indicating that Defendants were more likely than not motivated by discriminatory intent, *see Surrell*, 518 F.3d at 1106, the Court will apply the *McDonnell Douglas* burden-shifting framework. In this regard, Defendants do not dispute that Plaintiff is a member of a protected class, was qualified for the employment position, and experienced an adverse employment action. (Doc. 83 at 8). Defendants do argue, however, that Plaintiff failed to show that non-Native American employees were treated more favorably than her. (*Id.*) Defendants alternatively contend that even if Plaintiff could set forth a *prima facie* case of discrimination, Plaintiff did not demonstrate that Defendants' legitimate, non-discriminatory reason for terminating Plaintiff, i.e., testing positive for marijuana while on duty in violation of the Merit Rules, was pre-textual. (*Id.*) Plaintiff did not respond to either of these arguments. *See* (Docs. 88, 91, 93). Nonetheless, the Court has reviewed the entire record to determine whether a disputed issue of material fact exists as to either of these arguments.

To begin, nothing in the record supports Plaintiff's "failure to promote" claims. After reviewing the record, the Court finds no document providing any indication as to the circumstances or specific dates that Plaintiff was allegedly denied promotions. Similarly, nothing in the record establishes that non-Native Americans were promoted faster or more frequently than Plaintiff. Plaintiff's mere speculation and conjecture in her FAC is not enough to avert summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). To the extent Plaintiff believes she was discriminated against for promotions between "1995-2002," (Doc. 84-3 at 104), her claims are barred by the relevant statutes of limitation as Plaintiff did not file this lawsuit until 2014. *See Nat'l*

- 9 -

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–14 (2002) (explaining that a failure to promote claim is a discrete act which triggers the running of the statute of limitations when it occurs); 42 U.S.C. § 2000e-5(e)(1) (requiring that a discrimination claim under Title VII must be brought with the EEOC between 180 and 300 days of the alleged unlawful employment practice); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) (finding that the statute of limitations for a § 1981 claim in Arizona is two years (citing Ariz. Rev. Stat. § 12-542)).

As to Plaintiff's termination claim, no admissible evidence supports her assertion that similarly situated, non-Native American employees tested positive for drugs or alcohol while on duty but were not terminated. The undisputed facts demonstrate that all ten employees who failed drug or alcohol tests since January 2010 were terminated or resigned in lieu of termination. (Doc. 84 at 5). Based purely on "gossip" and "word around the county," Plaintiff named several co-workers that she believed failed a drug test but were not terminated. *See* (Docs. 84 at 10; 84-1 at 115; 84-3 at 104). However, during the tenure of Defendant Latoski, these named employees either never tested positive for drugs or alcohol while on duty or were terminated after a positive test. (Doc. 84 at 10–11). Beyond her own speculation, Plaintiff presents no admissible evidence to show that these employees failed a drug test and continued to work at PWD either before or during Defendant Latoski's tenure. Accordingly, Plaintiff failed to set forth a *prima facie* case of discrimination and thus, summary judgment in favor of Defendants on Plaintiff's Title VII and § 1981 claims is appropriate. *See Celotex*, 477 U.S. at 322–23 ("The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.").[10]

---

[10] To the extent Plaintiff believes that PWD disproportionately selected her for random drug testing, the facts belie that accusation. Namely, Kingman Regional Medical Center—not PWD—selected employees for random drug testing, and further, of the ten employees terminated for testing positive for drugs or alcohol since 2010, eight of them were Caucasian, one was Hispanic, and one was Native American (Plaintiff). (*Id.* at 5).

Even if Plaintiff could establish a *prima facie* case of discrimination, Defendants set forth a legitimate, non-discriminatory reason for terminating Plaintiff. Specifically, Merit Rules 507 and 701 unequivocally state that an employee who occupies a safety sensitive position is subject to immediate termination for testing positive for marijuana. (Doc. 84 at 3). Here, Plaintiff was employed in a safety sensitive position and operated heavy machinery, such as backhoes, screening plants, scrapers, dozers and blades, tandem axle trucks, front end loaders, rollers, and sweepers. (*Id.* at 1). If Plaintiff was impaired by drugs or alcohol while on duty, the likelihood of harm to herself and the general public would be substantially increased. Plaintiff admitted to illegally consuming marijuana and tested positive for marijuana while on duty. (*Id.*) Thus, Defendants' decision to terminate Plaintiff fell entirely within PWD's policies thereby establishing a legitimate, non-discriminatory reason.

Because Defendants provided a legitimate, non-discriminatory reason for terminating Plaintiff, Plaintiff must demonstrate the reason is pre-textual in order to avert summary judgment. *See Surrell*, 518 F.3d at 1106. Plaintiff made no argument in this regard, *see* (Docs. 88, 91, 93), and nothing in the record shows pre-text. Consequently, even assuming Plaintiff could establish a *prima facie* case of discrimination, Plaintiff did not establish that Defendants' legitimate, non-discriminatory reason was pre-textual thereby making summary judgment in favor of Defendants on Plaintiff's Title VII and § 1981 claims appropriate. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994) ("[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption.").

### 3. Conclusion for Counts 7 and 10

Accordingly, because Plaintiff failed to set forth a *prima facie* case of discrimination and alternatively because Plaintiff did not show that Defendants' legitimate, non-discriminatory reason for terminating Plaintiff was pre-textual, Defendants are entitled to summary judgment on Counts 7 and 10 of Plaintiff's FAC.

### B. Counts 8 and 9: Violations of FMLA

In Counts 8 and 9 of her FAC, Plaintiff asserts that Defendant Mohave County interfered with her rights under the FMLA. (Doc. 4 at 18–20).[11] Plaintiff claims that she and her son suffered from qualifying "serious health conditions" under the FMLA and that she provided Defendant Mohave County with adequate notice of her need for leave. (*Id.* at 18). Plaintiff further asserts that Defendant Mohave County "knew or should have known that the medical conditions of Plaintiff Yazzie and her son during the relevant time period constituted serious health conditions within the meaning of the FLMA." (*Id.*) Plaintiff avers that Defendant Mohave County did not provide her with notice of her FLMA rights but interfered with her FLMA rights by "criticizing her performance for requesting and receiving leave to care for herself and her son." (*Id.*) Finally, Plaintiff asserts that Defendant Mohave County interfered with her FLMA rights by subjecting her to less favorable treatment than those around her via "heightened scrutiny, constant criticism, and subjecting her to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct." (*Id.* at 19).

#### 1. Legal Standard for Interference under the FMLA

"The FMLA creates two interrelated, substantive employee rights: first, the

---

[11] Although Count 9 of Plaintiff's FAC is entitled "FMLA-Retaliation," (Doc. 4 at 19), the claim is one for interference with FMLA rights. The United States Court of Appeals for the Ninth Circuit has explained that "[b]y their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). Rather, "the statutory and regulatory language of [the] FMLA makes clear that where an employee is subjected to 'negative consequences . . . simply because he has used FMLA leave,' the employer has interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1)." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) (quoting *Bachelder*, 259 F.3d at 1124). The issue "becomes one of discrimination and retaliation" only when "an employee is punished for opposing unlawful practices by the employer." *Id.* Here, Plaintiff does not claim that she was "punished for opposing unlawful practices" of Defendant Mohave County, and the Court has found no allegations in the FAC supporting a retaliation claim under the FMLA. Thus, the Court construes Plaintiff's FAC as alleging a single claim for interference under the FMLA.

- 12 -

1  employee has a right to use a certain amount of leave for protected reasons, and second,
2  the employee has a right to return to his or her job or an equivalent job after using
3  protected leave." *Bachelder*, 259 F.3d at 1122 (citations omitted). The FMLA provides
4  two ways to protect these substantive rights, one rooted in an employer's interference
5  with an employee's FMLA rights, the other based on employer retaliation. *Id.* at 1124.

6  Under 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with,
7  restrain, or deny the exercise of or the attempt to exercise" the substantive rights
8  guaranteed by FMLA. When a party alleges a violation of § 2615(a)(1), it is known as an
9  "interference" or "entitlement" claim. *Id.* To prove a claim for interference, the employee
10 must show that "(1) [s]he was eligible for the FMLA's protections, (2) [her] employer
11 was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he
12 provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied
13 [her] FMLA benefits to which [s]he was entitled." *Sanders v. City of Newport*, 657 F.3d
14 772, 778 (9th Cir. 2011) (quotation omitted). The employee "can prove this claim, as one
15 might any ordinary statutory claim, by using either direct or circumstantial evidence, or
16 both." *Bachelder*, 259 F.3d at 1125.

17 As explained above, the Court deems Plaintiff's FMLA-related claims to be a
18 singular claim for interference under the FMLA.

19 **2. Analysis**

20 To begin, FMLA interference claims must be brought within two years of the date
21 of the alleged violation for which the claim is brought. 29 U.S.C. § 2617(c)(1). Here, the
22 only year in which Plaintiff alleges that Defendant Mohave County denied her FMLA
23 leave was 2008. (Doc. 84 at 9–10). There is no allegation—much less any evidence—that
24 Plaintiff properly requested and was denied FMLA leave at any time thereafter.
25 Consequently, because Plaintiff did not bring her interference claim until 2014, her claim
26 is barred by the statute of limitations.

27 Moreover, nothing in the record supports Plaintiff's assertions. Counts 8 and 9 are
28 predicated on Plaintiff's belief that she suffered from a "serious health condition."

(Doc. 4 at 18). In this regard, Plaintiff failed establish that she was treated by a health care provider as required by the FMLA, thereby failing to raise a material issue of fact that she suffered from a "serious health condition" that qualified her for FMLA leave in 2008. *See, e.g.*, 29 U.S.C. §§ 2612, 2611(11); 29 C.F.R. § 825.125(a); *Sanders*, 657 F.3d at 778 (holding that a viable FMLA claim requires a showing that the employee was entitled to leave). In addition, Plaintiff did not provide any evidence that she timely notified Defendant Mohave County of her FMLA leave requests, nor did she detail the specific dates she purportedly requested and was denied FMLA leave. Here, too, Plaintiff failed to raise a disputed issue of material fact. *See Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011) ("In order to establish an FMLA violation, the employee must demonstrate that the employer received sufficient notice of an employee's intent to take FMLA leave." (citation omitted)). In fact, the only record evidence concerning the FMLA is in regards to Plaintiff's granted FMLA leave requests in 2000 and 2004. (Doc. 84 at 9–10). Nothing in the record—beyond Plaintiff's accusations—indicates that Plaintiff requested FMLA leave in 2008.

Consequently, even assuming the statute of limitations did not bar her claim, Plaintiff never properly requested FMLA leave that was denied or showed that she was entitled to FMLA leave. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1245 (9th Cir. 2014) (explaining that because a plaintiff had taken FMLA leave in the past, she knew the process to request FMLA leave, and her failure to properly follow protocol for FMLA leave demonstrates that she did not intend to take FMLA leave). Thus, Plaintiff failed to establish a *prima facie* case of FMLA interference thereby making summary judgment in favor of Defendant Mohave County proper. *See* § 2615(a)(1); *Celotex*, 477 U.S. at 322–23 ("The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.").

### 3. Conclusion for Counts 8 and 9

For the foregoing reasons, the Court will grant summary judgment in favor of

Defendant Mohave County on Counts 8 and 9 of Plaintiff's FAC.

### C.    Count 11: Violation of § 1983

Plaintiff's last remaining Count alleges that the individual Defendants violated her civil rights pursuant to § 1983. (Doc. 4 at 21–22). Specifically, Plaintiff claims that the individual Defendants violated her Equal Protection and Due Process rights under the Fourteenth Amendment to the United States Constitution by "implement[ing] a plan to . . . terminate" her, subjecting her to "increased scrutiny and more severe discipline compared to similarly situated coworkers," not enforcing the Drug and Alcohol Testing Policies consistently, and terminating her. (*Id.*)

#### 1.    Legal Standard for § 1983

Section 1983 is not a source of substantive rights on its own. *Graham v. Connor*, 490 U.S. 386, 393 (1989). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Id.* at 394 (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). "To make out a cause of action under section 1983, [a] plaintiff[] must [show] that (1) the defendants acting under color of state law (2) deprived [the] plaintiff[] of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citing *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962)). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

#### 2.    Analysis

To begin, because Plaintiff seeks damages from the individual Defendants in their personal capacities, she must show that each individual Defendant caused her constitutional injuries. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). In this regard, there is no evidence that Defendants Osuna, Stockbridge, and Twitchel were involved in the decision to terminate Plaintiff or in the enforcement of the Merit Rules. There is also

no evidence that any of these Defendants "implemented a plan to . . . terminate" Plaintiff. Similarly, no evidence shows that these Defendants held any sort of racial animus towards Plaintiff. Plaintiff thus failed to show that these Defendants caused the alleged constitutional violations that Plaintiff asserts she incurred. Accordingly, Defendants Osuna, Stockbridge, and Twitchel are entitled to summary judgment on Plaintiff's § 1983 claim. *See Celotex*, 477 U.S. at 323 ("The moving party is entitled to judgment as a matter of law [if] the nonmoving party . . . fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

Regarding Defendant Latoski, Plaintiff failed to raise a disputed issue of material fact as to whether he violated her constitutional rights. As described in detail above, nothing in the record indicates that Defendant Latoski terminated Plaintiff due to any racial animus in violation of her Equal Protection rights. Plaintiff's conclusory allegations in her FAC are not enough to withstand summary judgment. As to her Due Process rights, the record shows that Plaintiff understood Mohave County's drug policies long before she was selected for the random drug test and knew that she could be terminated if she tested positive for an illegal substance. (Doc. 84 at 12). Defendant Latoski gave Plaintiff notice that she was being placed on administrative leave and informed her of her right to retest the split sample. (*Id.* at 7). Moreover, Defendant Latoski gave Plaintiff advance notice of his intent to terminate her employment. (*Id.*) Finally, Plaintiff was given the opportunity to appeal her termination. (*Id.* at 7–8). These undisputed facts demonstrate that Plaintiff was afforded sufficient Due Process, and Plaintiff failed to raise a disputed issue of material fact such that a reasonable jury could find in her favor.

### 3. Conclusion for Count 11

Accordingly, because no disputed issue of material fact exists such that a reasonable jury could find for Plaintiff, the Court will grant summary judgment in favor of the individual Defendants on Count 11 of Plaintiff's FAC.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Counts 7-11 of Plaintiff's First Amended Complaint, (Doc. 83), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff on all counts of the First Amended Complaint, (Doc. 4), *see also* (Docs. 74, 82), and shall terminate this case.

Dated this 19th day of July, 2016.

*James A. Teilborg*
Senior United States District Judge